UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSHUA SNIDER,

        Plaintiff,               Case No. 2:19-cv-134

v.                                         Honorable Paul L. Maloney

UNKNOWN SCHMIDT et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Corizon Medical Corporation.

## Discussion

    **I.**    **Factual Allegations**

Plaintiff Joshua Snider, a transgender prisoner, was incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette,

Michigan, when she filed her complaint. The events about which Plaintiff complains occurred while she was incarcerated at MBP and at the Carson City Correctional Facility (DRF), the Oaks Correctional Facility (ECF), the Bellamy Creek Correctional Facility (IBC), and the Michigan Reformatory (RMI).

Plaintiff sues Corizon Medical Corporation (Corizon) and Corizon employees Dr. Unknown Schmidt and Nurse Unknown Faulk. She also sues Health Services Unit Manager (HUM) C. Scott, who works for the MDOC at RMI, and Brenda James, who works for the MDOC at MBP. In addition, Plaintiff sues five unnamed individuals identified as "Jane Doe #1," "Jane Doe #2," "Dr. John Doe #1," "Dr. John Doe #2, and "John Doe #3," who work for either Corizon or the MDOC.

Plaintiff alleges that she has been diagnosed with "GID" (i.e., gender identity disorder, also known as gender dysphoria) and has been living as a transgendered woman since the age of 16. She became a prisoner with the MDOC in March 2016. For at least a year before her incarceration with the MDOC, she took female hormones. When she arrived at the MDOC, she was labeled "Transgendered," but she did not receive hormone therapy at that time. (Compl., ECF No. 1, PageID.6.)

Plaintiff met with each of the individual defendants at various times from 2017 to 2019 and discussed her condition or need for hormone treatment, but she did not receive that treatment until February 2019. For a brief period in September 2017, Plaintiff received hormone treatment while detained at the Wayne County Jail under a writ for pending criminal charges against her. In contrast, it took several years for her to receive hormone treatment while under Defendants' care. Plaintiff also requested female undergarments at some point in time, but in January 2019, Dr. Schmidt told her that those garments were not approved.

2

Plaintiff claims that Defendants were deliberately indifferent to her serious medical needs, in violation of the Eighth Amendment, because they failed to provide hormone treatment for almost two years, and have not provided female undergarments. As relief, Plaintiff seeks a declaratory judgment against Defendants Corizon, Schmidt, Faulk, Scott, James, John Doe #1, John Doe #2, John Doe #3, Jane Doe #1, and Jane Doe #2. She also seeks damages and an injunction requiring the MDOC or its agents to provide her with undergarments appropriate for her gender.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Corizon

A private entity like Corizon, which contracts with the State of Michigan to perform the traditional state function of providing healthcare to inmates, can "be sued under § 1983 as one acting 'under color of state law.'" *See Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). For Corizon to be liable, however, the execution of its policy or custom must be the source of the alleged injury. *Perry v. Corizon Health, Inc.*, No. 17-2489, 2018 WL 3006334, at *1 (6th Cir. June 8, 2018). In other words, Corizon is subject to the same standard for liability as a municipal defendant. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[M]unicipal defendants may only be sued under § 1983 for their own unconstitutional or illegal policies and may not be held vicariously liable for the unconstitutional acts of their employees." *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 691).

Plaintiff has not plausibly alleged that a policy, practice, or custom of Corizon is the source of her injury. To the contrary, she contends that there were MDOC policies in place that could have prevented her suffering. (*See* Compl., PageID.11.) Moreover, she does not even

4

mention Corizon in the body of the complaint, except when referring to the fact that some of the individual defendants work for Corizon. As indicated above, however, Corizon is not liable simply because one or more of its employees violated Plaintiff's constitutional rights. Thus, Plaintiff fails to state a claim against Corizon.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The Court is satisfied that Plaintiff has alleged a serious medical need for hormone treatment, especially considering that Plaintiff received hormone treatment before, and for a brief period during, her incarceration. *See Spisak v. Wilkinson*, No. 1:01-CV-136, 2001 WL 36178103, at *3 (N.D. Ohio Apr. 27, 2001) ("Courts have consistently considered transsexualism to be a 'serious medical need' for purposes of the Eighth Amendment."); *Phillips v. Mich. Dep't of Corrs.*, 731 F. Supp. 792, 799-800 (W.D. Mich. 1990) (termination of hormone therapy not appropriate where inmate had been previously diagnosed with gender dysphoria by a medical professional and was being treated with hormone therapy upon incarceration). Indeed, MDOC policy recognizes the need to provide treatment for gender dysphoria. Policy Directive 04.06.184, which became effective in June 2017, states that gender dysphoria is a condition that "represents serious medical needs which may not be ignored." *Id.* ¶ J. The policy calls for a "Gender Dysphoria Collaborative Review Committee (GDCRC)" comprising various medical and mental health professionals to

"review and affirm" diagnoses of gender dysphoria and to formulate "management plans" for the medical and mental health treatment of prisoners with gender dysphoria, and for appropriate housing placement, custody classification, and institutional programming. *Id.* ¶ C. The policy specifically permits hormone treatment for a prisoner with gender dysphoria if the GDCRC approves it. *Id.* ¶ O. It also permits the provision of "[c]lothing/ underclothing and other items available for each gender" as part of a management plan. *Id.* ¶ L(3).

The Court is also satisfied that Plaintiff has alleged enough facts from which to infer that Defendants were deliberately indifferent to Plaintiff's need for treatment. It is not clear at this stage what role each of the individual defendants played in deciding whether to approve or deny hormone treatment or undergarments for Plaintiff's condition. According to the complaint, Dr. Schmidt, Nurse Faulk, and Jane Doe #2 were members of the GDCRC (which Plaintiff refers to as the "G.I.D. committee"). Thus, if the MDOC's policies were followed, these defendants are the ones most likely to have been responsible for the denial of hormone treatment or the delay in providing it. But the other defendants may have been responsible as well. All of the individual defendants appear to be medical or mental health providers for Corizon or the MDOC, and they all met with Plaintiff at one time or another in response to her requests for treatment, yet she did not receive treatment until long after those meetings took place.

For instance, Dr. Schmidt met with Plaintiff in March 2017, October 2017, December 2017, and January 2019. Plaintiff allegedly told Dr. Schmidt about her diagnosis and previous hormone treatment at their very first meeting in 2017. Jane Doe #1, a mental health case worker, met with Plaintiff in March 2017 and told Plaintiff that the MDOC would be changing its treatment of gender dysphoria in June 2017. Dr. John Doe #1 examined Plaintiff in July 2017, and Plaintiff told him about her condition. Dr. John Doe #2 examined Plaintiff a few months later, in

September 2017, and Plaintiff explained her history of gender dysphoria and treatment with hormones. Plaintiff also told John Doe #2 about the "withdrawal" symptoms she was experiencing, including "hot flashes, vomiting, deep depression, anxiety, mania, and visual impairments." (Compl., PageID.7.) John Doe #3 conducted a psychological evaluation of Plaintiff in May 2018, after Plaintiff kited health services to receive treatment for her condition. Jane Doe #2 evaluated Plaintiff for gender dysphoria between May and July 2018. HUM Scott interviewed Plaintiff about her condition in September 2018. Nurse Faulk interviewed Plaintiff in November 2018 and promised to schedule a meeting with Plaintiff, Faulk, and Dr. Schmidt, but that meeting did not take place until January 16, 2019. In addition, Plaintiff apparently met with Defendant James about her gender dysphoria on November 20, 2018, and James later discussed Plaintiff's condition with Dr. Schmidt.

Because all of the foregoing Defendants appear to have had some connection to evaluating Plaintiff for treatment, were allegedly aware of her need for treatment, and may have been involved in the decision about whether to provide treatment, or may have been responsible for the delay in necessary treatment, the Court will allow the Eighth Amendment claims against these Defendants to proceed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Corizon will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against all the other Defendants remain in the case.

An order consistent with this opinion will be entered.


Dated: September 23, 2019          /s/ Paul L. Maloney
                                   Paul L. Maloney
                                   United States District Judge