UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA SNIDER #834248,                                      Case No. 2:19-cv-00134

         Plaintiff,                                      Hon. Paul L. Maloney
                                               U.S. District Judge

    v.

UNKNOWN SCHMIDT, et al.,

         Defendants.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

## I. Introduction

This is a civil rights action brought by state prisoner Joshua Snider pursuant to 42 U.S.C. § 1983.  Snider claims to suffer from gender identity disorder ("GID"), which is also known as gender dysphoria.  The events about which Snider complains occurred while he was incarcerated at Maquette Branch Prison (MBP), the Carson City Correctional Facility (DRF), the Oaks Correctional Facility (ECF), the Bellamy Creek Correctional Facility (IBC), and the Michigan Reformatory (RMI).  Snider alleges that the Defendants delayed hormone therapy treatment at these facilities between March of 2017 and January 2019, in violation of his Eighth Amendment rights.

The remaining Defendants are Dr. Schmidt, Nurse Practitioner (NP) Falk, B. James, C. Scott and six Jane/John Does.  Dr. Schmidt and NP Falk are represented by the Chapman Law Group, while Scott and James are represented by the Michigan Attorney General.

This report and recommendation addresses three motions for summary judgment and a motion to proceed to trial filed by Snider.

First, on October 24, 2019, Dr. Schmidt and NP Falk filed a motion for summary judgment.  (ECF No. 14.)  This motion asserted that Snider failed to exhaust his administrative remedies.  Snider has responded, and Schmidt and Falk have replied.  (ECF Nos. 17, 19.)

Second, on January 3, 2020, James filed a motion for summary judgment, also asserting that Snider failed to exhaust his administrative remedies.  (ECF No. 25.) Snider has responded.  (ECF No. 25, 34.)  While James's motion was pending, Snider filed a motion to amend his complaint, and the Court granted the motion.  (ECF Nos. 28, 36.)  James then filed a reply brief that conceded that ECF No. 25 should be denied as moot.  (ECF No. 38.)

Third, on May 1, 2020, James filed a revised motion for summary judgment, again asserting that Snider had failed to exhaust his administrative remedies.  (ECF No. 41.)  Snider has not responded to this motion.[1]

Finally, pending before the Court is Snider's motion to proceed to trial (ECF No. 39), which states that he is ready for trial.  Defendant James filed a response to this motion.  (ECF No. 40.)

In response to Defendants' exhaustion motions, Snider argues (1) that he did not need to specifically name each Defendant in a grievance, (2) that he exhausted

---

[1]    Defendants C. Scott and the six unknown Jane/John Doe parties have not been served with a summons and complaint.  Defendant Corizon Medical Corporation was dismissed by opinion and order on September 23, 2019.  (ECF Nos. 7 and 8.)

his grievances through each step of the process, and (3) that his grievances were improperly rejected as duplicative.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motions for summary judgment and deny Snider's motion to proceed to trial.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006).   "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, \*5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.

*See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV.  Plaintiff's Allegations

Plaintiff's allegations, which are set forth in his original and amended complaints, are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Denial of hormone therapy in violation of the Eighth Amendment | Faulk, Schmidt, James, C. Scott, and John/Jane Does. | March 2017 – January 2019 |

## V.  Grievances Identified by the parties

In their motion for summary judgment, Defendants identified three grievances that Snider filed with MDOC and pursued through Step III of the grievance procedures.  They claim that a review of these grievances will demonstrate that Snider has failed to properly exhaust his administrative remedies.  Snider claims that two of these grievances – **MBP-18-12-1634-28A** and **MBP-19-01-022-28A** –

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

exhausted the claims he asserts in this case against each Defendant.[4]    These

grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-06-0812-27A (ECF No. 42-3, PageID.486-488) | Non-defendant Schroderous | Equal Protection and First Amendment violations arising out of misconduct ticket | June 5, 2019 | Rejected as not an issue that can be grieved | Rejected | Rejected |
| MBP-18-12-1634-28A (ECF No. 42-3, PageID.489-492) | Non-defendant RN Cathie and Defendants Schmidt, Falk, James, and C. Scott | Falk and Schmidt keep providing different answers regarding hormone therapy | December 21, 2018 | Rejected as duplicative of five prior grievances | Rejected | Rejected |
| MBP-19-01-022-28A (ECF No. 42-5, PageID.56; ECF No. 42-3, PageID.493-499) | Non-defendant RN Cathie and Defendants Schmidt and Falk | Purposeful delay of hormone therapy treatment for GID | December 22, 2018 | Rejected as duplicative of five prior grievances | Rejected | Rejected |

---

[4]    Snider concedes that grievance **MBP-19-06-0812-27A** is not relevant to this lawsuit.

### VI.   Additional Unexhausted Grievances Identified by Defendant James

Defendant James identified eight additional, potentially relevant grievances

that Snider filed, but failed to exhaust through Step III of the MDOC grievance

process.[5]  These grievances are summarized below.[6]

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-18-11-1464-12f (ECF No. 42-4, PageID.510-511, 519) | Schmidt | Denial of hormone treatment in violation of the Eighth Amendment | November 14, 2018 | Denied | Not appealed | Not appealed |
| MBP-18-12-1551-12d3 (ECF No. 42-4, PageID.520, 523) | Schmidt and James | Denial of hormone treatment | November 20, 2018 | Denied | Denied | Not appealed |
| MBP-18-11-1516-12d1 (ECF No. 42-4, PageID.522, 547) | James and Schmidt | Denied treatment | November 28, 2018 | Denied | Denied | Not appealed |
| MBP-18-12-1550-12d1 (ECF No. 42-4, PageID.514-515, 525, 530, 536) | Schmidt and Falk | Not called out for hormone treatment and failed to comply with MDOC policy | December 4, 2018 | Denied | Not appealed | Not appealed |
| MBP-18-12-1559-12d3 (ECF No. 42-5, PageID.512-513, 521, 527, 533, 546) | Schmidt and Falk | Not called out for hormone treatment when Dr. Schmidt came to MBP | December 4, 2018 | Denied | Not appealed | Not appealed |

---

[5]     On January 7, 2019, Snider was placed on modified access to the grievance process due to the excessive number of grievances he had filed.  This required Snider to obtain grievance forms by request from the grievance coordinator until April 7, 2019.

[6]     Defendant James has attached numerous copies of grievances to the brief filed by Snider at Exhibits 4-6.  Many of the grievances are not relevant to Snider's claims and Defendant has attached multiple copies of some of the same grievances.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-18-12-1558-12b1 (ECF No. 42-4, PageID.524, 528, 534, 539, 549) | Case manager and doctor | Refused to provide mental health care | November-December 2018 | Denied | Not appealed | Not appealed |
| MBP-18-12-1580-12e1 (ECF No. 42-4, PageID.529, 535, 540-541) | C. Scoot (Scott) and RN Dianne | No response regarding hormone treatment | December 9, 2018 | Denied | Not appealed | Not appealed |
| MBP-18-12-1584-28a (ECF No. 42-4, PageID.545) | Schmidt, C. Scoot (Scott), James, and Falk | Failed to refer to staff who can prescribe hormone treatment | December 12, 2018 | Rejected as duplicative | Rejected | Not appealed |

**VII. Analysis**

The parties concede that the issue is whether Snider exhausted grievances **MBP-18-12-1634-28A** and **MBP-19-01-022-28A.**  Snider says that he exhausted these two grievances and Defendants say that he failed to properly exhaust these grievances because the grievances were rejected at each step of the grievance process for presenting duplicative issues.  Snider says that the grievances should not have been rejected as duplicative.

Grievances **MBP-18-12-1634-28A** and **MBP-19-01-022-28A** were both rejected as being duplicative of grievances that Snider had already filed regarding the denial of hormone therapy treatment.  When a grievance is rejected as duplicative, the court must look through that grievance to the prior grievance or grievances filed by the prisoner.  *Hardy v. Agee*, No. 16-2005, 3-4 (6th Cir., Mar. 5, 2018) (W.D. Mich. Case No. 2:13-cv-230).  To determine whether a duplicative grievance is unexhausted, the Court must compare the later grievance to the earlier

12

grievance. *Reedy v. West*, 2017 WL 2888575 (E.D. Mich. May 5, 2017). If the first

grievance or grievances were properly exhausted through each step of the process,

the duplicative grievance is also considered exhausted. *Id.* If the first grievance or

grievances were not properly exhausted, then the duplicative grievance is also

unexhausted. *Id.*

Snider had filed several grievances, including MBP-18-11-1464-12f, MBP-18-

12-1551-12d3, MBP-18-11-1516-12d1, MBP-18-12-1550-12d1, MBP-18-12-1559-

12d3, MBP-18-12-1558-12b1, MBP-18-12-1580-12e1, and MBP-18-12-1584-28a.

However, Snider failed to pursue each of these grievance through Step III of the

grievance process. Snider's prior grievances are unexhausted. When Snider filed

**MBP-18-12-1634-28A** and **MBP-19-01-022-28A**, he again argued that he was denied

hormone treatment therapy. The MDOC properly rejected these grievances as

duplicative and instructed Snider to pursue his previously filed grievances through

the step III grievance process.

Although the MDOC Policy Directive on the grievance process, PD 03.02.130

(ECF No. 42-2, PageID.474) is relatively long, the grievance process itself is relatively

simple. The process, however, requires a prisoner to pursue an issue through each

step of the process in a timely manner. A prisoner may choose to drop a grievance at

any stage of the process. But, as noted above, when a prisoner fails to pursue a

grievance all the way to its completion at Step 3, the prisoner has not exhausted his

administrative remedies. Relatedly, when a prisoner files a second grievance that

repeats claims from an earlier grievance, the MDOC rejects the second grievance.

(*Id.*, PageID.476 (Paragraph G.1.).)  Snider abandoned some of his grievances by failing to purse any of those grievances to step III of the grievance procedures.  He then repeated his claims in subsequent grievances.  In the opinion of the undersigned, Snider failed to properly exhaust his claims against each named Defendants and those claims should be dismissed.

## VIII.  The Unserved Defendants

Defendants C. Scott and the seven unknown Jane/John Doe parties have never been served with a summons and complaint.  On July 7, 2020, waiver of service was returned unexecuted on Defendant Scott.  (ECF No. 45.)  A summons for Defendant Scott was issued to the U.S. Marshal's service.   The summons was returned on July 28, 2020, because Defendant Scott could not be served at the Michigan Reformatory, the address provided by Plaintiff, because he does not work for the MDOC.  (ECF No. 46.)

In the opinion of the undersigned, the seven Jane/John Doe Defendants and Defendant Scott should be dismissed without prejudice under Fed. R. Civ. P. 4(m). Rule 4(m) provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.

## IX. Recommendation

The undersigned respectfully recommends that this Court:

14

1.  Grant Defendant Schmidt and Falk's motion for summary judgment (ECF

No. 14) and dismiss Defendant Schmidt and Falk without prejudice from this

case;

2.  Deny Defendant James's first motion for summary judgment (ECF No. 25)

as moot;

3.  Grant Defendant James's second motion for summary judgment (ECF No.

41) and dismiss Defendant James without prejudice from this case;

4.  Dismiss the unserved Defendants Jane/John Does and Defendant C. Scott

without prejudice; and

5.  Deny Snider's motion for an order to proceed to trial (ECF No. 39.)

If the Court adopts these recommendations, this case will be dismissed.


Dated:   August 12, 2020                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).